J-S32032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.B., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: A.B., MOTHER : | |
| : | |
| : | |
| : | |
| : | |
| : | No. 246 EDA 2019 |

Appeal from the Order Entered December 12, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-2247-2018

BEFORE:  SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 19, 2019**

A.B. (Mother) appeals from the order finding that her three-year old son T.B. (Child), born in May of 2015, was the victim of child abuse, and finding the abuse proven as to Mother.  After careful consideration, we affirm.

The record reveals that on October 2, 2018, the Philadelphia Department of Human Services (DHS) received a Child Protective Services (CPS) report alleging that Mother inflicted a burning or scalding injury to Child.  N.T., 12/12/18, at 46-47.  Shortly thereafter, DHS obtained an order of protective custody and Child was removed from the home.  *Id.* at 48.

The DHS investigator, Shante Johnson, observed two injuries to Child's chest, two to his back, and one to his ear.  *Id.* at 50.  Ms. Johnson took Child to the emergency room where Child exhibited behavioral concerns, throwing things and cursing.  *Id.*

Mother informed Ms. Johnson she found the injuries while washing Child on October 2, 2018, and that Child stated his teacher from daycare scratched him. *Id.* at 52-53. Mother suggested that Child could have burned his ear on her flat iron, but insisted the other injuries came from daycare. *Id.* at 54. Child's daycare providers asserted it was not possible that the injuries occurred at their facilities.[1] *Id.* at 58. DHS determined the CPS report was indicated as to Mother and her paramour, S.D. *Id.* at 59-60.

On October 9, 2018, DHS filed a dependency petition, asserting that Child lacked proper care or control and was a victim of child abuse. On December 12, 2018, the juvenile court conducted a hearing with respect to the petition. DHS presented the testimony of Dr. Marita Lind, the director of the child protection program at St. Christopher's Hospital for Children, and Shante Johnson, the DHS investigator. The advocate for Child presented testimony of Katina Alexander, a clinician at Child's therapeutic nursery. Mother and S.D. both testified on their own behalf.

At the hearing, the parties stipulated to Dr. Lind testifying as an expert in pediatric child abuse.[2] N.T., 12/12/18, at 15-16. Dr. Lind first met Child on October 11, 2018, recalling that she could hear Child crying down a very long hallway, and that when she picked Child up he fell asleep immediately. *Id.* at 21-22. Dr. Lind observed that Child had two "fairly deep" injuries on

---

[1] Child attends both a daycare and a therapeutic nursery.

[2] Dr. Lind testified that she is involved with the treatment of approximately 350 incidents of child abuse each year. N.T., 12/12/18, at 18.

his anterior chest, two less significant injuries on his back, and a healing abrasion on his ear. *Id.* at 22-23. Although there was an initial concern that the injuries were cigarette burns, Dr. Lind did not believe they were cigarette burns, but described them as "really unusual" and "pretty deep" on the front of Child's chest. *Id.* at 23. Further, no explanation had been provided for the injuries. *Id.* at 23-24.

Dr. Lind testified that the wounds on Child's chest "weren't the typical kinds of injuries that you see in normal childhood activities. That I really wasn't able to conclude whether they were caused by a burn or by something that removed some skin from the area." *Id.* at 24. She described the injuries as, "[n]ot at all typical." *Id.* at 30. Although she could not determine whether the injuries were burns, she observed similar characteristics, and would classify the injuries as second degree burns if they were, in fact, burns. *Id.* at 25. Dr. Lind testified that the injuries were caused by trauma, would not go unnoticed, and would have caused pain. *Id.* at 26-27. Indeed, they would have made it difficult for Child to sleep on his stomach. *Id.* at 27-28.

Dr. Lind opined that the injuries occurred around the same time and were not self-inflicted. *Id.* at 28-29. Although she could not identify the mechanism of trauma, she noted that it would be very unusual for there to be an accidental injury to both the front and back of Child at the same time. *Id.* at 29-30. The injuries were concerning for child abuse because they were not typical of accidental injuries occurring in normal activities. *Id.* at 31. Dr. Lind testified, "[w]henever a child experiences trauma that's not explained and

care isn't sought it does raise the concern for child abuse." *Id.* Although Dr. Lind conceded the injuries could arise from an accident, she noted the accident would need to involve an event such as entrapment or a high velocity injury, and there was no history of such event occurring in this case. *Id.* at 38.

Katina Alexander testified that another worker at Child's therapeutic nursery observed the injury on Child's ear on October 1, 2018, and that she observed it on October 2, 2018. *Id.* at 75-76. Ms. Alexander also observed the injuries on Child's chest, which appeared to her to be cigarette burns. *Id.* at 80. She was unaware of any incident at the nursery that could have caused the injury. *Id.* at 81. Further, Child disclosed, "Dad hit me." *Id.* at 76. She noted that Child refers to S.D. as his father. *Id.* at 84-85. After observing the injuries to Child, she called Mother in the morning, but Mother did not call back. *Id.* at 90.

Thereafter, Mother testified, recalling that she picked up Child and his siblings from daycare on October 1, 2018. *Id.* at 97-98. After she took them home, she fed them, and Child played before he went to bed. *Id.* On October 2, 2018, she bathed Child in the morning and observed scratches on his chest and back. *Id.* at 98. After discovering the injuries, Mother inspected Child's clothes from the day prior and did not observe any holes or blood. *Id.* at 116. Mother asserted that she put an antibiotic cream on Child's chest and back. *Id.* at 100. Mother testified that Child's injuries "looked like someone gripped him up and scratched him really deep." *Id.* at 111. Mother claimed that she did not seek medical attention immediately because she wanted to find out

what happened, and Child stated that Ms. A. from daycare caused the injuries. *Id.* at 98-101. Accordingly, Mother took Child to daycare to confront his teacher. *Id.* Mother acknowledged that on October 2, 2018, after discovering the injuries, she left Child at daycare, explaining that she was scheduled to meet with the director later in the day and had to work. *Id.* at 103. Mother insisted that she believed Child was injured at daycare by Ms. A. *Id.* at 108.

S.D. testified that Mother told him about Child's injuries on the morning of October 2, 2018, and he accompanied Mother to the daycare. *Id.* at 120. He asked Child what happened and Child informed him Ms. A. or Child's older brother caused the injuries. *Id.* S.D. denied abusing Child and asserted that he was never left alone with Child. *Id.* at 120-24.[3]

On December 12, 2018, following the hearing, the court entered an order finding that Child was a victim of child abuse and that Mother was the perpetrator. The court did not find Child dependent, but instead continued the hearing on Child's dependency due to DHS's failure to serve Child's natural father. On January 10, 2019, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[4]

---

[3] Mother similarly denied that S.D. ever slept over at the home and testified that Child was never alone with S.D. N.T., 12/12/18, at 114-15.

[4] This Court has previously stated, "[a] court determination of child abuse without disposition would . . . be an interlocutory order," while describing the situation as "intolerable" and proceeding to review the issue on the merits.

On appeal, Mother presents the following issue for our review: "Whether the trial court erred and abused its discretion when it made a finding of child abuse against [M]other, where DHS did not present clear and convincing evidence that [M]other abused her child[?]" Mother's Brief at 1.

We review Mother's appeal for an abuse of discretion. *See In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). The standard of review in dependency cases "requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *Id.* (citation omitted).

> [E]ven where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826–27 (Pa. 2012) (citation omitted).

---

*In Interest of R.M.R.*, 530 A.2d 1381, 1386 (Pa. Super. 1987). Here, the juvenile court entered an order of adjudication and disposition on January 10, 2019, adjudicating Child dependent, transferring legal custody of Child to DHS, and placing Child in kinship care with his maternal grandmother. Without question, this order is appealable. *See In re: C.A.M.*, 399 A.2d 786 (Pa. Super. 1979) (dependency adjudication is appealable after both a determination of dependency and a disposition of the child). Further, "[o]ur rules provide that if appeal is prematurely filed from an interlocutory order, the appeal is perfected when a final, appealable order is subsequently entered." *In re N.W.*, 6 A.3d 1020, 1021 n.1 (Pa. Super. 2010).

Our Supreme Court has explained "a petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations. . . ." **In re L.Z.**, **supra**. This Court has stated that "clear and convincing evidence" requires:

> that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

**In the Interest of J.M.**, 166 A.3d 408, 423 (Pa. Super. 2017) (citation omitted).

Section 6303 of the CPSL defines "child abuse," in relevant part, as follows:

> **§ 6303. Definitions.**
>
> ***
>
> **(b.1)** *Child abuse.* — The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> **(1)** Causing bodily injury to a child through any recent act or failure to act.

23 Pa.C.S.A. § 6303(b.1)(1). In addition, Section 6303 defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S.A. § 6303(a).

The identity of the perpetrator of child abuse "need only be established through *prima facie* evidence in certain situations. . . ." **In re L.Z.**, **supra** at

1174. *Prima facie* evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." *Id.* at 1184 (citing Black's Law Dictionary 825 (6th ed. abridged 1991)). Section 6381(d) of the CPSL provides:

> **§ 6381. Evidence in court proceedings.**
>
> ***
>
> **(d) Prima facie evidence of abuse. --** Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S.A. § 6381(d).

> The Supreme Court in *L.Z.* Court held:
>
> [E]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*In re L.Z.*, *supra* at 1185 (footnote omitted).

In her sole argument, Mother asserts that the juvenile court erred in concluding that Mother abused Child because Child never asserted Mother

- 8 -

injured him and "DHS presented no direct evidence by eye witness testimony or otherwise to prove that the child was abused by [M]other." Mother's Brief at 1-3. Mother recounts her testimony that Child disclosed that his teacher injured him and that Mother provided appropriate medical care. *Id.* at 3. Mother argues that her failure to explain Child's injuries "does not mean that she was the perpetrator of abuse or permitted someone else to abuse the child." *Id.* Mother, quoting *Matter of Read*, 693 A.2d 607, 611 (Pa. Super. 1997), observes, "[i]t is an unwarranted conclusion to find abuse simply because the parents did not introduce any explanations for the injuries." Mother's Brief at 3. Mother contends that the juvenile court's order should be reversed because "DHS failed to provide the [c]ourt with clear, competent, and convincing evidence that the child was abused by [M]other." *Id.* at 4.

Instantly, the trial court considered Section 6303(b.1)(1) and Section 6381(d), concluding that DHS presented sufficient evidence to establish Mother committed child abuse. N.T., 12/12/18, at 134-35. The court did not find child abuse as to S.D. based on Mother's testimony that S.D. never cared for Child. *Id.* at 135.

Our review of the record supports the court's findings as to Mother. The credited testimony presented at the hearing established that Child had multiple injuries, including injuries that were unusual and deep, and resembled second-degree burns. Dr. Lind observed that the injuries "weren't the typical kinds of injuries that you see in normal childhood activities," and were caused by trauma. Although Dr. Lind testified that she could not identify

the mechanism of trauma, she noted that it would be unusual for there to be an accidental injury to both the front and back of Child at the same time. In response, Mother testified that S.D. never cared for Child and opined that the injuries to Child occurred when an adult at Child's daycare grabbed Child.

In *Matter of Read*, this Court held:

> A thorough review of the testimony simply does not rise to the level required to declare these children abused. It is an unwarranted conclusion to find abuse simply because the parents did not introduce any explanations for the injuries. The evidence must show by clear and convincing evidence that the children were abused and that the injuries were not accidental. The testimony here fails to support a conclusion that the injuries were not accidental. The only conclusive fact is that these children suffered bone fractures. The medical testimony and the testimony from CYS was inconsistent as to whether these injuries where in fact accidental. Innuendo and suspicion alone are not enough to compel a finding of child abuse.

*Matter of Read*, 693 A.2d 607, 611-12 (Pa. Super. 1997). Similarly, we have reversed findings of child abuse when the injury in question is "consistent with a normal accident involving a child of his age" and the evidence is otherwise insufficient to conclude that the injury was the result of abuse. *See In Interest of J.M.*, 166 A.3d 408, 423–24 (Pa. Super. 2017).

Here, the credited testimony established that the injuries were painful and caused by trauma, not self-inflicted, and inconsistent with a normal accident of childhood. Dr. Lind further opined that the injuries were concerning for child abuse. While Dr. Lind observed that accidental causes could be the source of the injuries, she clarified that such accidents would have to be similar to an entrapment or high velocity collision, and such events

- 10 -

cannot be considered a normal accident for a three-year-old. Accordingly, the juvenile court had record evidence upon which to find that DHS established *prima facie* evidence that Mother perpetrated abuse pursuant to Section 6381(d). ***See In re L.Z.***, 111 A.3d at 1185-86. Mother attempted to rebut the presumption, asserting that an adult at daycare injured Child. However, despite Mother's claim that Child's injuries occurred at Child's daycare, the juvenile court rejected Mother's testimony when it concluded that Mother was the perpetrator of abuse. Based on the record, and deferring to the juvenile court's credibility determinations, the court did not abuse its discretion in concluding that Child suffered abuse that was perpetrated by Mother. Accordingly, we affirm the court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/19